Eastern District of Kentucky
**FILED**

**MAR 2 9 2006**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-293-KSF

LESLIE CAMPBELL                                                         PLAINTIFF

V.                                  **OPINION & ORDER**

REPUBLICAN CENTRAL EXECUTIVE COMMITTEE
a/k/a REPUBLICAN PARTY OF KENTUCKY, *et al.*                      DEFENDANTS

* * * * * * * * * * * * *

This matter is before the Court on the following motions:  (1) the motion of defendant

Republican Party to dismiss under rule 12(b)(6) [DE #15]; (2) the motion of defendant James

Lacy to dismiss [DE #17]; (3) and the plaintiff's motion to file amended complaint [DE #20].

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, the plaintiff was employed as a time keeper with the

Kentucky Department of Transportation ("KDOT") in its Wolfe County, Kentucky, office in

Campton beginning February 1, 2005.  She claims that when she originally applied for the position

and took the applicable tests, she was advised that she scored in the "highest percentage" with

regard to her potential employment with the KDOT.  She also claims that, prior to being hired,

she had conversations with several of the defendants who related to her past political support –

and anticipated future political support – of candidates with whom the defendants were politically

aligned.

In June of 2004, the plaintiff claims that defendants Grayson Smith ("Smith") and James

Lacy ("Lacy") met with her at her residence in Campton and that Lacy advised her that if she

were to change her political party registration from Democrat to Republican, it would increase her chances of being hired by the KDOT and that Smith would help the plaintiff in this regard. (The plaintiff alleges that defendant Smith was acting as a "de facto agent" of the KDOT.) The plaintiff asserts that she reluctantly changed her party affiliation on her voter registration on June 28, 2004, and was ultimately hired as the time keeper in the KDOT Campton office on February 1, 2005, where she worked until her employment was terminated on June 29, 2005.

The plaintiff asserts that her employment was wrongfully terminated as part of an unconstitutional patronage policy and/or custom, and that she was punished for not being sufficiently loyal to the Republican Party and/or to the policies of Governor Ernie Fletcher. She asserts that defendant Lacy advised her during the relevant time period that her husband had been "too vocal" in supporting Democratic candidates in a local election in 2004. Shortly after she was hired, she was advised by fellow workers that she was on a "hit list." Just before the end of her probationary period, the plaintiff received correspondence from defendant Tim Hazelett advising her that she was being terminated for failing to "satisfactorily complete [her] initial probationary period."

In the meantime, a woman named Della Dunn apparently was also interested in working for the KDOT in Campton. According to the plaintiff, Dunn had "been unsuccessful" in the testing administered to new applicants, but was politically connected to those in the Republican Party and was hired in August of 2004 (prior to the plaintiff's hire date). The plaintiff claims that, due to allegedly unlawful intercessions by defendant Dick Murgatroyd ("Murgatroyd"), Dunn was promoted to time keeper in the KDOT Campton office to replace the plaintiff, and that the

-2-

plaintiff was terminated in order to make way for and reward Dunn for her support of the Fletcher administration and the Republican Party.

The plaintiff filed this action on July 18, 2005, pursuant to 42 U.S.C. § 1983, claiming that her civil rights had been violated. She also asserts that her federal due process rights were violated and claims a violation of state law for tortious interference with employment. She seeks reinstatement, restoration of all lost benefits, compensatory damages, and punitive damages in the amount of $1 million against each of the individually-named defendants.

## II.   MOTIONS TO DISMISS/PLAINTIFF'S MOTION TO AMEND

### A.   The Parties' Arguments

#### 1.   *Defendant Republican Party's Motion*

The Republican Party of Kentucky ("Republican Party") asserts in its motion that the plaintiff has failed to state a claim against it and, thus, moves for dismissal pursuant to Rule 12(b)(6). It argues that the complaint contains only the barest of legal conclusions generally, and offers no direct or inferential allegations of a factual nature of any actionable conduct by the Republican Party. The Republican Party first points out that there is nothing in the complaint that identifies any named individual or other person as an employee or agent of the Republican Party. As a result, there are no factual allegations premised on the conduct of any Republican Party official or agent. Rather, the complaint generally alleges that all defendants "conspired" or acted in concert. Thus, because there are simply no allegations of any actionable conduct by any employee or agent of the Republican Party, all claims should be dismissed.

As to specific claims, the Republican Party asserts that these should be dismissed on other grounds, as well. In order to state a §1983 claim, the plaintiff must allege conduct by a state

actor. A political party is not the state and cannot be a state actor for purposes of § 1983.
Further, private entities such as the Republican Party are not subject to § 1983, except in very
narrow circumstances that are not indicated here. As for any "conspiracy," the plaintiff fails to
identify any state actor with whom the Republican Party allegedly conspired. Finally, the
Republican Party asserts that the plaintiff has failed to allege any agreement between it and a state
actor, and since agreement is the essence of conspiracy, this claim must fail.

The Republican Party further asserts that the tort claims must fail as well. The plaintiff's
general and vague accusation that the Republican Party intentionally and tortiously interfered with
her continued employment does not state a claim under Kentucky law. As with the § 1983 claim,
there are no allegations of specific conduct by any agent or employee of the Republican Party.

### 2.    *Defendant James Lacy's Motion*

Defendant Lacy also filed a motion to dismiss, arguing that the complaint fails to state any
claim against him. Specifically, he asserts that the complaint does not state or allege that he or
co-defendant Smith acted with any authority or as an agent, employee, official, or other
representative of the Republican Party. Based on the absence of any such allegation, Lacy argues
that he cannot be viewed "as anything other than an ordinary private citizen of the
Commonwealth of Kentucky." As such, there is no law that prevents Lacy as a private citizen
from making recommendations or expressing his beliefs and/or opinions. Since he has no power
to hire, fire, promote, or demote an employee of the Commonwealth, he cannot be held
accountable for same.

Defendant Lacy also asserts that the plaintiff's complaint does not contain sufficient
allegations of how, where, when, or with whom Lacy allegedly participated in any conspiracy to

-4-

terminate the plaintiff's employment; the complaint only suggests that Lacy was involved with *securing* her employment. Defendant Lacy also argues, as does the Republican Party, that he had no authority or ability to act under color of state law and did not possess any decision-making power within the Republican Party and/or state government necessary to effect the plaintiff's discharge.

### 3.   *The Plaintiff's Joint Response/Motion to Amend Complaint*

In response to the motions to dismiss, the plaintiff filed a motion to amend her complaint. In the motion, she states that she seeks to add allegations regarding defendant Lacy[1] and his status as the county contact for the "LINK program," which the plaintiff believes is associated with either the Governor's office or the KDOT. However, the complaint also adds a paragraph alleging that defendant Lacy "was operating as an authorized agent of the Defendant Republican Party as an agent of the Defendant Transportation Cabinet." She also alleges that Lacy was empowered by these defendants to make job offers, threats, promises, and employment recommendations that ultimately led to the plaintiff's unlawful dismissal. The amended complaint further adds an allegation that during the relevant time period, defendant Smith was working as a "de facto agent" of the KDOT and some other unknown position within state government.

In response to the motions, the plaintiff asserts that a private party may be deemed a state actor for purposes of § 1983 if the private party is a willful participant and involved in joint activity with the state or other agents. The plaintiff alleges that all defendants were jointly

---

[1]       The title page of her original complaint identified Lacy as being sued "[i]ndividually and as an apparent agent of the Republican Central Executive Committee; a/k/a Republican Party of Kentucky," but there was no further reference to Lacy in this capacity in the body of the complaint.

involved in what the complaint describes as an unconstitutional purge of employees perceived not to be politically loyal. Defendant Lacy was a "willful participant" in a joint activity with the Commonwealth of Kentucky through the KDOT and with the Republican Party. According to the plaintiff, the United States Supreme Court's decision in <u>Rutan v. Republican Party</u>, 497 U.S. 62 (1990), makes it clear that political parties can act under color of state law when they get involved in employment decisions. The plaintiff argues that she makes substantially the same allegations in the present case.

The plaintiff asserts that her complaint clearly states that defendant Lacy and the Republican Party conspired with the other defendants to terminate her employment and that Lacy carried out the unconstitutional patronage policy at the direction of and in concert with the other defendants, and that this is sufficient "agreement" to sustain her claims. Further, the plaintiff has alleged that defendant Smith – a state actor – and Lacy acted in concert when they demanded that she change her political affiliation to increase her changes of being employed by the KDOT.

As for defendant Lacy, who was listed as a contact person for the Governor's LINK office, the plaintiff alleges that he was acting as a de facto agent for the Republican Party and the Commonwealth when he demanded she change her voter registration. The plaintiff also alleges that he played a substantial role in terminating her employment due to what he described as her husband being "too vocal" in a local race.

### 4. *Republican Party's Replies*

Regarding the motion to amend, the Republican Party objects on the grounds that the plaintiff has failed to demonstrate a just reason for amending and because the actual amendment exceeds the justification presented in the motion.  In other words, the plaintiff asserts that she is amending to add allegations about defendant Lacy, but actually sets out an amendment that unjustifiably extends an allegation against the Republican Party.

In further support of its motion to dismiss, the Republican Party argues that neither the complaint (referring apparently to the original and *not* the amended complaint) nor the plaintiff's response identify anyone as an agent, employee, official, or representative of the Republican Party.  Neither attributes any specific act to the Republican Party and at no point does the plaintiff specify in any way the manner in which the Republican Party agreed to pursue an unlawful plan related to the plaintiff or anyone else.  A conclusory allegation of a conspiracy is insufficient.  Further, the plaintiff failed to make any argument in support of her state law tort theories.  This is simply because the plaintiff failed to state any claim concerning any Kentucky tort theory.

Defendant Lacy did not file a reply in further support of his motion to dismiss.

### B.    Analysis

Although Rule 15(a) of the Federal Rules of Civil Procedure is generally a liberal pleading statute, a motion for leave to amend may be denied for futility "if the court concludes that the pleading as amended could not withstand a motion to dismiss."  Martin v. Associated Truck Lines, Inc., 801 F.2d 246, 249 (6th Cir. 1986).  Thus, in determining whether to permit the plaintiff to amend her complaint, the Court will first consider the allegations of the amended complaint under the standards for a motion to dismiss.

### *1.     Standards*

The case of LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097 (6th Cir.

1995), sets out the applicable law on motions to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6):

> A complaint should not be dismissed unless it appears beyond doubt that plaintiff
> can prove no set of facts in support of his claim which would entitle him to relief.

Id. at 1104. "A complaint need only give 'fair notice of what the plaintiff's claim is and the

grounds upon which it rests.' " *In re* DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).

Further, in considering a motion to dismiss, the Court "must construe the complaint in the light

most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and

determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that

would entitle him to relief." Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 512 (6th Cir. 2001)

(citation omitted). Under the liberal notice pleading rules, a complaint need only put a party on

notice of the claim being asserted against it to satisfy the federal rule requirement of stating a

claim upon which relief can be granted. Memphis, Tennessee Area Local, American Postal

Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004) (hereinafter

"City of Memphis").

### *2.     Section 1983 Conspiracy Claims*

In order to establish a § 1983 claim, the plaintiff must prove that she was deprived of a

right, privilege, or immunity secured by the Federal Constitution or the laws of the United States

by a person acting under the color of state law. Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir.

1995). A private party is liable as a state actor for purposes of § 1983 if the private party "is a

-8-

willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398

U.S. 144, 152 (1970) (citation omitted).[2]

The standard for proving a civil conspiracy was set forth in Hooks v. Hooks, 771 F.2d

935 (6th Cir. 1985), as follows:

> A civil conspiracy is an agreement between two or more persons to injure
> another by unlawful action. Express agreement among all the conspirators is not
> necessary to find the existence of a civil conspiracy. Each conspirator need not
> have known all of the details of the illegal plan or all of the participants involved.
> All that must be shown is that there was a single plan, that the alleged
> coconspirator shared in the general conspiratorial objective, and that an overt act
> was committed in furtherance of the conspiracy that caused injury to the
> complainant.

Id. at 943-44. The Sixth Circuit has stated that "[i]t is well-settled that conspiracy claims must be

pled with some degree of specificity and that vague and conclusory allegations unsupported by

material facts will not be sufficient to state such a claim under § 1983." Gutierrez v. Lynch, 826

F.2d 1534, 1538 (6th Cir. 1987) (ruling on motion for summary judgment, rather than a motion to

dismiss); see also Farhat v. Jopke, 370 F.3d 580, 599 (6th Cir. 2004) (ruling on motion for

summary judgment); Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003) (ruling on motion

to dismiss); Fisher v. City of Detroit, 1993 WL 344261 (6th Cir. Sept. 9, 1993) ("Courts have

traditionally viewed conspiracy suits against public officials with suspicion and disfavor.

Accordingly, pleading requirements governing civil conspiracies are relatively strict."). However,

---

[2]     Generally, there are three tests for determining whether a private party's conduct is
fairly attributable to the state: the public function test, the state compulsion test, and the nexus
test. However, according to an unpublished Sixth Circuit decision, "[a]pplication of these tests to
the conduct of a private entity . . . is relevant only in cases in which there are no allegations of
cooperation or concerted action between state and private actors." Memphis, Tennessee Area
Local American Postal Workers Union, AFL-CIO v. City of Memphis, 86 Fed. Appx. 137 (6th
Cir. Jan. 21, 2004) (citations omitted). In the face of such an allegation, the "joint activity"
standard applies. Id.

at this early stage of the proceedings, where a Court is considering a motion to dismiss as opposed to one for summary judgment, the Sixth Circuit has also made it clear that claims made pursuant to 42 U.S.C. § 1983 are not subject to any heightened pleading standard. <u>City of Memphis,</u> 361 F.3d at 902; <u>Jones v. Duncan,</u> 840 F.2d 359, 361 (6th Cir. 1988) (stating that § 1983 plaintiff need not set down in detail all the particularities of her claim against a defendant).

Turning to the "single plan" element, the amended complaint states numerous times that certain defendants "conspired," "acted in concert," acted "at the direction [of] and in concert with" one another, or "conspired with others" to cause the plaintiff's employment to be unlawfully terminated. There is, however, no allegation that there was any agreement or that the defendants agreed to any plan. The closest the plaintiff comes to alleging a plan or agreement is the following:

> 3. . . . . [The Republican Party] during the relevant time frame, through its agents, acted as the final decision makers in concert with various Commonwealth of Kentucky employees in the execution of an unlawful and unconstitutional patronage system conspired to and executed by the Defendants, which resulted in the unlawful termination of the Plaintiff and other innocent victims of their political purge(s).

> 4. The defendant Lacy conspired with the other Defendants to terminate the employment of the Plaintiff as part of a [sic] unconstitutional patronage policy and/or custom. Lacy carried out patronage duties at the direction [of] and in concert with the other defendants. . . . .

> . . . .

> 13. During the relevant time period, it was the Defendants' pattern and practice to unconstitutionally promote people based on their political performance and to cause an unlawful and unconstitutional purge of those the Defendant(s) perceived not to be politically loyal.

> . . . .

-10-

> 16. . . . Specifically, the Plaintiff alleges that she lost her employment due
> to the fact that the Defendants unconstitutionally wished to promote Della Dunn to
> her position as a reward for Della Dunn's past and anticipated future support of
> Fletcher administration patronage policies and the unlawful and unconstitutional
> retaliation against the Plaintiff for her hesitancy in supporting the Fletcher
> administration patronage policies.

(Amend. Compl.)  The clear implication of the amended complaint is that all of the defendants had

the same goal – to ensure that the Campton KDOT office was staffed only with loyal Republican

employees, and in that sense, there was arguably a "single plan."  However, there are no

allegations of any agreement anywhere in the amended complaint, only the conclusory language

cited above.

This is in contrast to other civil conspiracy cases in which the allegations were sufficient to

withstand a motion to dismiss.  For example, in Mettetal v. Vanderbilt University, Legal Dept.,

2005 WL 2108536 (6th Cir. Sept. 1, 2005), the plaintiff, who was unlawfully arrested on

Vanderbilt's campus, sued a number of defendants asserting a civil conspiracy under § 1983.  The

district court ruled that the plaintiff's allegations of conspiracy were too vague, but the appellate

court disagreed, holding that the allegations were sufficient to state a claim that the defendants

conspired to falsely arrest the plaintiff.  In support, the court quoted portions of the complaint

alleging that defendants had "conferred" with one another, that one defendant had "encouraged"

another to proceed with the false arrest, that the defendants "worked in concert/conspired" with

one another in the false arrest, and that two of the defendants had "corroborated/collaborated" in

the false arrest.  Other than conclusory allegations that the defendants conspired with one another

and acted jointly in meeting with the plaintiff at her home prior to her hiring, the present case does

not make any other allegations similar to those in the Mettetal case.

-11-

In a published decision, the Sixth Circuit reversed the district court's grant of a motion to dismiss in a § 1983 civil conspiracy case, and found that the "single plan" element was met because the plaintiff had alleged that the defendants' conduct "was the result of an agreement." City of Memphis, 361 F.3d at 905. As noted above, there is nothing in the amended complaint about any agreement, and the only mention of any "joint activity" by a private actor and a state actor is the meeting that defendants Lacy and Smith had with the plaintiff at her home the summer *before* she was hired.

However, where the plaintiff in Mettetal had failed "to allege that the parties entered into any kind of agreement or formed a single plan" to illegally interrogate him (as opposed to the plan to falsely arrest him), the dismissal of these claims was proper. Likewise, in Temple v. Temple, 1998 WL 939535 (6th Cir. Dec. 21, 1998), the Sixth Circuit held that where two separate defendants' actions may have independently violated the plaintiff's civil rights, but "no connection between these two courses of events [was] alleged other than the conclusory allegation that a conspiracy existed[,]" dismissal pursuant to Rule 12(b)(6) was proper.

Based on the above, the Court concludes that the plaintiff has not sufficiently pled facts alleging a single plan to terminate her employment because she was not sufficiently loyal to the Republican Party or the Governor's policies. At best, the plaintiff has alleged facts to support a conspiracy between defendants Lacy and Smith to *hire* the plaintiff only if she were a registered Republican, but there are no facts to connect either defendant Smith or Lacy to the *termination* of the plaintiff's employment. Similarly, there are no facts to connect defendants Smith or Lacy to defendant Hazelett, who actually terminated the plaintiff's employment. In fact, the plaintiff does not make any factual allegations as to how any of the other defendants named in the alleged

-12-

complaint are connected to Hazelett, other than the conclusory allegations that they all conspired together in some general, undefined way. In short, the amended complaint is long on succinct conclusions, but short on allegations of material fact in support of those conclusions.[3]

Even assuming that the amended complaint contains sufficient material factual allegations to show a civil conspiracy, the plaintiff has not alleged sufficient material facts to support a finding that the Republican Party or defendant Lacy, as private parties, can be held liable under § 1983. As noted above, a private actor can be held liable under § 1983 if they are "a willful participant in joint activity with the State or its agents." In the complaint, the plaintiff has alleged that defendant Lacy was acting as an agent of the defendant Republican Party at all times.[4] However, even accepting this as true, the only "joint activity" alleged between defendant Lacy and any state actor involved the plaintiff's *hiring*, not the termination of her employment. There simply are no facts connecting any activity of the Republican Party or any of its agent to the plaintiff's termination (the only claim the plaintiff makes). Thus, even if the Court determined that the plaintiff had sufficiently pled a civil conspiracy, she has not sufficiently alleged the "joint activity" necessary to hold these private defendants liable under § 1983.

The case of Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), relied on by the plaintiff, does not assist the plaintiff's case. She argues that Rutan specifically held that political

---

[3]      These observations apply with equal force to the next element – that the alleged coconspirator shared in the general conspiratorial objective.

[4]      Under Kentucky law, agency "is a question of fact to be determined by a jury from a consideration of all the evidence, facts, circumstances, acts, and conduct of the parties." Crump v. Sabath, 88 S.W.2d 665, 667 (Ky. 1935). Thus, when considering the motions to dismiss, the Court must accept the plaintiff's factual allegation that Lacy was an agent of the Republican Party.

-13-

organizations such as the Republican Party can be held liable for their participation in operating a political patronage system that conditions public employment on "political allegiance." This is a misstatement of the Supreme Court's holding in <u>Rutan</u>. The only question before the Court and decided in <u>Rutan</u> was whether the plaintiffs' First Amendment rights had been violated when transfer, promotion, and hiring decisions were made based on party affiliation; the Supreme Court held that the plaintiffs had stated such a claim. However, the question of whether the Republican Party of Illinois as a private actor could be held liable pursuant to § 1983 was not at issue in <u>Rutan</u>. Thus, the plaintiff's conclusion that "the <u>Rutan</u> decision made it clear that political parties can act under color of state law when they get involved in employment decisions" is simply wrong.

### 3.   State Claims

The amended complaint also claims that the Republican Party, through its agents, intentionally and tortiously interfered with the plaintiff's continued employment with the Commonwealth of Kentucky. While Kentucky law recognizes the tort of intentional interference with an existing contract, the Court can find no cause of action for intentional interference with continued employment. The Republican Party raised this in its motion to dismiss, but the plaintiff did not respond to this argument.

## IV.   CONCLUSION

Based on the above, the Court finds that the tendered amended complaint could not withstand a motion to dismiss as to the defendants Lacy and the Republican Party, and therefore, the motion to amend will be denied and the Court will grant the defendants' motions to dismiss.

-14-

However, the Court will dismiss the claims *without* prejudice in order to permit the plaintiff another opportunity to move to amend her complaint to provide more specific factual support in accordance with this opinion. Failure to address the pleading concerns enunciated herein will result in dismissal of these claims *with* prejudice. Should the plaintiff file a motion to amend, the defendants may at that time file another motion to dismiss if they determine the pleadings to be insufficient.

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1)    the motion of defendant Republican Party to dismiss under rule 12(b)(6) [DE #15] is GRANTED;

(2)    the motion of defendant James Lacy to dismiss [DE #17] is GRANTED;

(3)    the plaintiffs' claims against defendants Republican Party and James Lacy are DISMISSED WITHOUT PREJUDICE;

(4)    the plaintiff's motion to file amended complaint [DE #20] is DENIED;

(5)    the plaintiff may, if she so chooses, move for leave to file a second amended complaint that comports with this opinion no later than twenty (20) days after the date of entry of this Order; and

(6)    this order is interlocutory in all respects.

This 29'' day of March, 2006.

KARL S. FORESTER, SENIOR JUDGE