UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED

NOV 2 2 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-293-KSF

LESLIE CAMPBELL                                                           PLAINTIFF

V.                          **OPINION & ORDER**

REPUBLICAN CENTRAL EXECUTIVE COMMITTEE
a/k/a REPUBLICAN PARTY OF KENTUCKY, *et al.*                DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of defendant Republican Party of Kentucky

("Republican Party") to dismiss the corrected second amended complaint [DE #49].

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Some review of the procedural history of this case is helpful in deciding the present

motion. However, the factual background is laid out in more detail in the Court's previous

orders and will not be repeated herein.

The plaintiff was an employee of the Kentucky Department of Transportation ("KDOT")

who alleges that she was terminated because she was not sufficiently politically loyal to

Governor Fletcher and the Kentucky Republican party. She also alleges that she was fired in

order to open the position for another individual who was deemed politically loyal. The plaintiff

filed this action on July 18, 2006, pursuant to 42 U.S.C. § 1983, claiming that her civil rights had

been violated. She also asserted that her federal due process rights were violated and claimed a

violation of state law for tortious interference with employment.

In its opinion and order entered March 29, 2006, the Court granted the motions to dismiss of defendants Republican Party and James Lacy ("Lacy"). The Court first held that the plaintiff had failed to allege that there was any agreement or that the defendants had agreed to any plan, which was a necessary element to the plaintiff's claim of a conspiracy to violate her civil rights. In so holding, the Court noted that the complaint alleged only conclusory allegations that the defendants conspired together in some general, undefined manner. It further held that the plaintiff had failed to allege facts to support a finding that either of these defendants could be held liable as private parties under § 1983 (i.e., they were not "state actors"). The only "joint activity" alleged in the original and proposed amended complaints involved the plaintiff's hiring, not her termination. Finally, the Court dismissed the state claim of "tortious interference with continued employment" because it was not a recognized cause of action under Kentucky law.

Rather than dismiss the claims outright (because the statute of limitations would arguably have prohibited any further filings), the Court permitted the plaintiff an additional 20 days to file a second amended complaint addressing the concerns raised in its order. The plaintiff then filed a tendered second amended complaint which added the word "agreement" to the plaintiff's allegations that the defendants were engaged in an unconstitutional patronage system and also added a number of allegations regarding defendant Lacy. In the tendered second amended complaint, the only additional allegations regarding defendant Grayson Smith ("Smith") were allegations that he was a *de facto* agent of the Governor and the defendant Republican Party. The tendered second amended complaint also failed to delete the unrecognized Kentucky state law claim for "tortious interference with continued employment." In its order entered July 17, 2006,

-2-

the Court allowed the plaintiff to file yet another complaint that complied with the Court's prior orders.[1]

On July 26, 2006, the plaintiff filed her "corrected second amended complaint." Rather than simply delete the state law claim from the tendered second amended complaint, the plaintiff seems to have filed yet another complaint that does not correspond to the tendered second amended complaint. Some of the language regarding "agreement" from the tendered second amended complaint is gone, while other allegations regarding Lacy remain. The plaintiff did, however, delete the state law claim. Currently before the Court is the Republican Party's motion to dismiss the corrected second amended complaint.

## II.    MOTION TO DISMISS

### A.    Standard

It is well established that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court shall construe the pleading liberally and take all well-pleaded facts as true. Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). In short, the issue when considering a motion to dismiss is not whether plaintiff will ultimately prevail, but rather, whether plaintiff is entitled to offer evidence in support of his claims.

---

[1]     The Court also ruled on defendant Smith's motion to dismiss and determined that he had not properly been served. Smith has been the subject of separate orders not discussed in detail herein.

### B.     Agency

The Republican Party asks the Court to dismiss the corrected second amended complaint

for failure to plead facts sufficient to support a number of conclusions necessary to sustain her

claims. First, the Republican Party argues that the plaintiff has failed to plead any facts sufficient

for a finding that defendant Lacy was an agent of the Republican Party. The only allegation is

the conclusory statement that Lacy "at all times was operating as an authorized agent" of the

Republican Party. Other than that, argues the Republican Party, there is nothing in the complaint

to connect it with anything the plaintiff alleges. The Republican Party argues that it is

insufficient to state in conclusory fashion that Lacy was an agent; instead, the plaintiff is required

to plead the facts that would support a finding of agency in order to survive a motion to dismiss.

They cite a number of cases in support of this proposition.

The plaintiff responds that the corrected second amended complaint sufficiently alleges

facts to support Lacy's agency. First, it alleges that Lacy required the plaintiff to change her

political affiliation in order to secure initial consideration for the position. Second, the plaintiff

alleges that Lacy was the local contact person for the Republican Party with respect to jobs.

The Republican Party takes issue with the Court's statement in its March 29, 2006, order

that it accepted the plaintiff's factual allegation that Lacy was its agent for purposes of the

motion. The Republican Party argues that "courts around the country" agree that a somewhat

heightened pleading standard applies. However, after reviewing the cases cited by the

Republican Party, it is clear that this heightened standard for pleading agency arises only in cases

where there is a connection between the fact of agency and a claim of fraud or misrepresentation.

-4-

Each of the cases cited by the Republican Party involved a fraud claim. Rule 9(b) requires a heightened pleading standard for allegations of "fraud or mistake." However, allegations of agency are not mentioned in the text of this rule. Further, the United States Supreme Court in <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), refused an invitation to extend the heightened pleading standard beyond these two categories. Because fraud claims must be pled with more particularity, the fact of agency must be pled with more particularity in cases where these two are connected. However, the same cannot be said for a First Amendment claim that does not implicate Rule 9(b) of the Federal Rules of Civil Procedure. <u>See, e.g.</u>, <u>BP Chem. Ltd. v. Jiangsu Sopo Corp.</u>, 285 F.3d 677, 688 (8th Cir. 2002) (rejecting heightened pleading standard for agency in case where fraud was not alleged). Therefore, in this case, the plaintiff is not required to plead facts supporting each of the elements of agency. It may very well turn out that Lacy was not an agent of the Republican Party, but the plaintiff has properly pled agency in her complaint.

## C. "State Actor" Requirement: "Joint Activity"

The Republican Party also argues that the plaintiff has not pled facts sufficient to support a finding that it was a "state actor" as required for liability under 42 U.S.C. § 1983. It argues that political parties have been deemed state actors only in very limited circumstances not presented here, and never in a case involving a personnel action. Instead, the Republican Party argues, the plaintiff reinstates her misplaced reliance on <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62 (1990), which reliance the Court has previously rejected.

The plaintiff responds that she has alleged that Lacy, an agent of the Republican Party, made actual employment decisions. In such a case, where employment decisions were surrendered to a private entity, the allegations are adequate to defeat a motion to dismiss.

As stated in the Court's previous order, a private actor can be held liable under § 1983 if they are "a willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). In the original complaint (and tendered amended complaint), there were no facts connecting any activity of the Republican Party or Lacy (its purported agent) with the plaintiff's termination, which was the only claim the plaintiff made.[2] Thus, the Court determined that she had not sufficiently alleged the "joint activity" necessary to hold these private entities liable under § 1983 for her unlawful termination.

Because the Court has determined that the allegations in the previous complaints were insufficient to allege the requisite "joint activity," this analysis focuses on the new allegations. In the corrected second amended complaint, the plaintiff alleges that Lacy called the plaintiff after she had been hired and told her "You owe me" in order to convince the plaintiff that Lacy had been given actual authority by the other defendants with respect to her hiring and to further convince her that he could likewise cause her termination.[3] The plaintiff further alleges that the joint activity was accomplished when the defendants used Lacy to personally monitor the

---

[2]     The plaintiff discusses the fact that she had to change her political affiliation in order to get hired. However, her claims only have to do with her termination – she has not brought a claim in connection with her hiring.

[3]     The plaintiff also alleges that Lacy was empowered by unnamed defendants to "make job offers, threats, promises and employment *recommendations* . . . ." (Corrected Second Am. Compl. ¶ 5 (emphasis supplied).) However, the plaintiff does not allege that Lacy had actual authority to terminate the plaintiff's employment.

plaintiff's political activities. After concluding that the plaintiff was not sufficiently loyal, the plaintiff alleges that Lacy then "recommended, and the other Defendants knowingly agreed" that the plaintiff be terminated for lack of political loyalty. Other alleged joint activity includes the "hit list," which the plaintiff alleges was an agreement between the defendants to jointly pool information regarding political activities of certain employees and make employment decisions based on political loyalty. The plaintiff again alleges in connection with the "hit list" that she was terminated "upon the recommendation of the Defendant Lacy[.]"

The plaintiff also alleges that all defendants, "through a series of e-mails and other communications" had actual knowledge and intentionally cooperated in causing the plaintiff to be terminated for her political beliefs. Similarly, the plaintiff makes the general allegation that all of the defendants, through a series of communications, participated in the plaintiff's discharge with actual knowledge of the improper political motivation. Other than a conclusory allegation that all defendants acted under color of state law, these are the allegations the Court must consider in determining whether Lacy –and, thus, the Republican Party – can be considered a "state actor" for purposes of § 1983 liability.

The Court is of the opinion that the corrected second amended complaint does not allege facts sufficient to establish that the Republican Party was a state actor for purposes of § 1983 liability. The only actions the plaintiff alleges Lacy took are the following: (1) meeting with the plaintiff before she was hired and suggesting that the plaintiff would be hired if she changed her political affiliation to Republican; (2) telling the plaintiff "You owe me" after she was hired; (3) following the plaintiff's political activities; and (4) making recommendations to state officials regarding the plaintiff's employment. The law requires "joint activity" with the state, and these

-7-

alleged actions do not establish that Lacy or the Republican Party were a state actor in the context of the plaintiff's § 1983 claim.

As for the pre-hiring meeting, the Court noted in its previous opinion that, at best, this alleged joint activity related to the *hiring* of the plaintiff only if she were a registered Republican; however, none of her causes of action have to do with her hiring – only her *termination*. As to the last three instances of alleged "joint activity," these are insufficient to support a finding of state action as well. The Seventh Circuit faced a similar case in Vickery v. Jones, 100 F.3d 1334 (7th Cir. 1996). Therein, the defendants admitted that with respect to a temporary position in the state's transportation department, they considered affiliation with or support of the Republican party as one of the factors in hiring. The plaintiff had received one of the temporary appointments when his brother was chairman of the county Republican committee, but was passed over the next season when a new chairman took over, so the plaintiff sued state officials and the county Republican central committee.

The Seventh Circuit affirmed the lower court's dismissal of the Republican committee, noting the following:

> If the action prohibited under *Rutan* is the hiring, promoting, transferring or recalling of an individual based on his or her political association, since the Party Defendants did not hire, promote, transfer or recall anyone, their screening or recommending the hiring of employees for highway maintainer positions is not the same as being "jointly engaged with state officials in the prohibited action."

Id. at 1344 (citation omitted). As in Vickery, it appears that Lacy did not actually hire or terminate the plaintiff's employment and was never given authority to do so.[4] At most, he

---

[4]     Further, although not raised by either party, it is unclear how a private actor could ever be given such authority in light of a state statute setting forth who is authorized to make

-8-

screened the plaintiff by monitoring her political activities and recommended that she be terminated. However, this is not the same as being jointly engaged with state officials in the prohibited action of terminating her employment.

The corrected second amended complaint alleges that Lacy was empowered to "make job offers, threats, promises and employment recommendations" which led to the plaintiff's dismissal. However, this is also insufficient to meet the "joint activity" standard. Even if it can be read as an allegation that a state actor delegated to the Republican Party, through Lacy, actual hiring and firing authority (a proposition the Court questions), the plaintiff states later in the complaint that it was actually defendant Hazelett who terminated her employment. Thus, while the plaintiff argues in her brief that employment decisions had been "surrendered" to defendant Lacy, her complaint ultimately alleges that Lacy simply made recommendations in that regard and that someone *other than Lacy* did the actual firing. In alleging that someone other than the Republican Party fired her, she has not sufficiently alleged that the Republican Party engaged in joint activity with the Commonwealth or its agents. See, e.g., Steigmann v. Democratic Party of Illinois, 406 F. Supp.2d 975, 990-91 (N.D. Ill. 2005) (dismissing complaint making similar

employment decisions in state government:

> "Appointing authority" means the agency head or any person whom he has authorized by law to designate to act on behalf of the agency with respect to employee appointments, position establishments, payroll documents, register requests, waiver requests, requests for certification, or other position actions. Such designation shall be in writing and signed by both the agency head and his designee. Prior to the exercise of appointing authority, such designation shall be filed with the secretary . . . .

K.R.S. § 18A.005(1). Given this, neither Lacy nor the Republican Party could have had any actual hiring authority and could not have made any actual employment decisions.

allegations).  As here, where the final decisionmaker retains authority to reject Lacy's and the

Republican Party's recommendations, Lacy's recommendations cannot rise to the level of state

action.  See, e.g., National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 194-98 (1988)

(determining no state action, focusing on the fact that the university, as decisionmaker, retained

authority to reject the NCAA's recommendations about disciplining the coach).  The following

language from the district court's decision in Steigmann seems particularly appropriate here:

> Specifically, Steigmann alleges that Governor Blagojevich, through Handley,
> delegated hiring and firing authority with respect to Plaintiff's position to the
> Democratic Party. ( Id. at ¶ 55.) Although he alleges that the Democratic Party had
> "hiring and firing authority," Steigmann states later in the Complaint that it was
> Thomas, acting on the order of Governor Blagojevich, who instructed defendant
> Sheedy not to renew Steigmann's contract. ( Id. at ¶ 63.) In alleging that someone
> other than the Democratic Party fired him, Steigmann has not sufficiently alleged
> that the Democratic Party engaged in joint activity with the State or its agents. . . .
> By alleging that someone other than the Democratic Party was responsible for his
> termination, Plaintiff would have pled himself out of court (assuming his claim
> was not otherwise deficient).

Steigmann, 406 F. Supp. at 990-91 (citations omitted).

The plaintiff's reliance on language found in Eisert v. Town of Hempstead, 918 F. Supp.

601 (E.D.N.Y. 1996), is misplaced.  The Eisert case does not address the question of whether the

political committee in question was a state actor for purposes of § 1983 and, thus, is inapposite.

### D.   "Single Plan" Requirement

As with the "joint activity" element, the allegations in the corrected second amended

complaint still fall short of pleading a civil rights conspiracy.  In the Court's view, the complaint

only contains "vague and conclusory allegations that are unsupported by material facts" and,

thus, are insufficient to state a § 1983 claim.  Farhat v. Jopke, 370 F.3d 580, 599 (6th Cir. 2004).

-10-

**E.**     **Plaintiff's Probationary Status**

Based on the above, the Court need not address the Republican Party's argument that the

plaintiff had no claim because she was terminated prior to the end of her six-month probationary

period.

**III.     CONCLUSION**

Based on the above, the Court must dismiss the plaintiff's § 1983 claim against the

Republican Party.  Accordingly, the Court, being otherwise fully and sufficiently advised,

HEREBY ORDERS that

(1)     the Republican Party's motion to dismiss the corrected second
        amended complaint [DE #49] is GRANTED;

(2)     the plaintiff's claims against the Republican Party are DISMISSED
        WITH PREJUDICE; and

(3)     this order is interlocutory in all respects.

This _____ day of November, 2006.

_____
KARL S. FORESTER, SENIOR JUDGE

-11-